M. N. OXBOROUGH v. E. S. ST. MARTIN AND OTHERS.
FRANCIS C. CARY AND GEORGE A. LEWIS,
INTERVENERS.[1]

April 7, 1922.

No. 22,801.

**Statute of frauds—attorney's contingent fee in land litigation.**

1. An agreement between an attorney and client that the attorney
shall receive as a part of his fee a portion of certain land involved in
the litigation is within the statute of frauds and in order to be valid
such agreement must be in writing.

**Statute of frauds not annulled by statutory lien of attorney.**

2. The statutes with reference to the compensation and lien of at-
torneys do not override the statute of frauds.

Action in the district court for Hennepin county by interveners to
secure a lien for $2,383 upon the premises described and for a sale of
them to pay the lien. The case was tried before Leary, J., and a
jury which answered in the affirmative the question whether defend-
ants made the agreement to pay the interveners as claimed by the
latter. The court then made findings and ordered judgment in favor
of interveners. From an order denying their motion for a new trial,
defendants appealed. Reversed and new trial granted.

*James A. Peterson, Lancaster, Simpson, Junell & Dorsey, Harold W.
Cox & R. M. Works,* for appellants.

*Francis C. Cary,* respondent, pro se.

HALLAM, J.

Defendants became involved in litigation over the title to a tract
of land. The trial court decided that defendants had no title. De-
fendants then, in February, 1918, negotiated with a firm of attorneys,
of which intervener Cary was a member, to move for a new trial,

[1]Reported in 187 N. W. 707.

and, if that should be denied, then to appeal. It was stipulated that defendants should pay $250 for services in connection with the motion for a new trial and this was paid. Interveners further claim that it was orally agreed that, if the motion for a new trial was denied, the attorneys would take an appeal to this court and prosecute it to a conclusion, and, in the event defendants' title to the land should be established, the attorneys should have half the land. There was no writing to this effect and no written agreement of any character. The appeal was successful and resulted in establishing defendants' title to the land in question. Interveners, as successors to the rights of the original attorneys, came into the action claiming on the alleged oral contract and asking to have the court adjudge them owners of an undivided half of the land and to recover the rent and income thereof since the date of the contract. The court submitted to a jury the question whether the alleged agreement was made and the jury answered this question in the affirmative. The court then found interveners the owners of the land under the verbal contract and gave judgment for one-half of the rents and profits received by defendants from the date of the contract and for certain other money demands and found interveners entitled to a lien therefor against the half interest in said land remaining in defendants.

1. Several questions were argued in the briefs and orally, but we think the case is disposed of on the ground that the alleged contract was within the statute of frauds and therefore invalid. We see no escape from this conclusion. The agreement testified to by interveners was that the attorneys "would take one-half of the property and one-half of the judgment, or one-half of anything * * * saved * * * as compensation." The complaint in substance alleged the same agreement and alleged that interveners had demanded that defendants convey to them an equal undivided one-half interest in said premises and that they account for the rent and income from said premises from January 8, 1918, the date of the alleged contract, and the court found interveners to be the owners of an equal undivided one-half of said premises and ordered judgment for the rents and income as above stated. Clearly the contract alleged purported to create an "estate or interest in lands," and,

under the provisions of G. S. 1913, § 7002, such estate or interest could only be created by an instrument in writing.

2. Interveners contend that the provisions of the statutes with reference to the compensation and lien of attorneys override the statute of frauds. These statutes provide that "a party shall have an unrestricted right to agree with his attorney as to his compensation for services and the measure and mode thereof," G. S. 1913, § 7973, and that "an attorney has a lien for his compensation whether the agreement therefor be express or implied; * * * upon the cause of action * * * and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed." Chapter 98, p. 122, Laws 1917.

We find nothing in these statutes inconsistent with the statute of frauds. Attorney and client may make such agreement as to attorney's fees as they choose, but, if they choose to agree upon a conveyance of land as part or whole of the attorney's fees, there is nothing in these statutes which expressly or impliedly provides that such agreement is not required to be in writing as the statute of frauds provides.

Interveners contend that under the 1917 law the performance of the contract by the attorneys created a lien upon the title to the land to the extent fixed by the terms of the contract, to-wit: An undivided one-half interest therein, or, otherwise stated, that there may be a lien for the attorney's compensation though his compensation is to be paid in land. We are unable to adopt this theory. As stated in another part of intervener's brief, a lien upon the land to the extent of an undivided one-half interest in the fee thereof, if it has any meaning at all, means nothing more or less than the ownership of said one-half interest. It would be mere evasion to say that the statute of frauds may be avoided by calling a transfer in fee a mere lien.

The agreement having been contrary to the statute of frauds, the recovery must be on a quantum meruit.

Order reversed and new trial granted.